Counsel. Thank you. Good morning. May it please the Court. My name is Anne Traum, and I'm appearing on behalf of Dale McCollum. Before I begin, I do want to reserve five minutes for rebuttal. I will try to keep my eye on the clock. And also alert the Court that before our session this morning, I provided a copy of ABA Criminal Justice Standard 4-5.2. That is something that has already been cited in the briefs, but it was a little bit hard to find it in its full version with the four certified issues, and I plan to focus on issue number two, which is the claim that trial counsel was ineffective for failing to request instructions to the jury on the lesser-included offense of manslaughter. First of all, your acoustics aren't the greatest, so you'll need to try to probably speak distinctly and slowly, because I want to make sure I hear what you're saying. Yes. Thank you. Sorry. First, on the deficient performance prong of Strickland, it is undisputed from the record in this case that trial counsel before, during, and after trial believed that it was an unreasonable strategy not to request the lesser-included instruction. He viewed this case as a manslaughter case. He believed that requesting the instructions on manslaughter was the proper course of action, and he knew that failing to do not to request them, or failing to request them, excuse me, was not the proper course of action, and he knew that failing to request them was not the proper course of action, and he knew that failing to request them was not the proper course of action, and he knew that failing to request them was not the proper course of action, excuse me, was against his professional judgment and the best interest of the client. And then on the prejudice prong of Strickland, McCollum can show that but for his counsel's error, there is a reasonable probability that the jury may have convicted him on the manslaughter instruction had they been given the option. And the Nevada Supreme Court never actually addressed that issue since they applied the wrong standard. This is not a case where only in hindsight can we do we realize what mistake counsel made or what a lapse in judgment he made, because here it has been clear all along that counsel knew that he was pursuing an unreasonable strategy, a losing strategy for his client, and he knew that it was a bad idea. Apparently, the client was quite adamant. He said, they've charged me with murder, let them prove it. And he didn't want any other issue put before the jury. That's correct, that it's very obvious that they had a disagreement on this crucial issue of strategy, and that the memorandum of understanding, which the lawyer prepared himself five days before trial, documents that disagreement. But it also shows that the lawyer thought it was a manslaughter case, and it shows that he deferred to his client on this key strategy issue and knew that it was such a bad strategy that he wrote a memorandum to memorialize the disagreement. I understand all this, but I think it's kind of fuzzy in the law as to what issues are the province of the client and what are the province of the lawyer. So I'd kind of like you to focus on that. I'd be happy to. And I think that there's sort of three cases that are relevant. Strickland governs the lawyer's conduct, how that will be evaluated, and the standard is that it will be under the unreasonable standard. But also, it articulates that the client – that the lawyer has a duty of loyalty to the client, a duty to provide vigorous advocacy for the client. So Strickland tells us how his conduct will be evaluated. I think that Jones v. Barnes, which builds on Wainwright v. Sykes, an earlier case, tells us what, who makes which decisions, and I think constitutionalizes the rules that relate to those decisions. In Jones, which was a case where the issue was whether appellate counsel had a duty to press the issues on appeal that the client requested, the Court said no. The client only has four fundamental decisions to make, whether to appeal, whether to testify, whether to plead guilty, whether to waive a jury. After that, all of the other decisions are in the hands of the client. They specifically cite the rule, and I quote you from footnote 6 of the Jones decision, with the exceptions specified above, which are the ones I just listed. Strategic and tactical decisions are the exclusive province of defense counsel after consultation with the client. And in another place, they say it's the duty of counsel to take professional responsibility for the case. Excuse me. The cases that I saw indicated that there's not a Sixth Amendment constitutional violation where the lawyer overrides his client's concerns in certain contexts. But I didn't see any suggesting that there was a constitutional violation, Sixth Amendment violation, where the counsel did not accede to his client's requests. Have you encountered cases? Can you address that point? I don't think that there – well, there is the – I agree with you that there's no – I agree with your summation of the cases. I do believe that the Cannon case is a case where the client – where the lawyer overrides the client, and it was specifically on this issue, whether to go for a lesser included. And the lawyer felt that that was a bad strategy and that requesting the manslaughter was consistent with his strategy, which is precisely the situation that we have here. And so the lawyer holds the trump card in that respect. And I think that that is the way that it falls out from Wainwright v. Sykes and from Jones v. Barnes. And I think that the Jones v. Barnes analogy is perfect in the sense that the lawyer – the client decides whether to file an appeal. But once the appeal is taken, the client hands over the reins to counsel. And in Wainwright v. Sykes, they specifically mention that which jury charges to request is the kind of decision that counsel makes, and that counsel must make those decisions and be ultimately responsible for them. Let me come back to the question that I think Judge Ikuto was posing, and maybe I just missed the case reference you made. But I have really the same sense, that this discussion usually comes up in the context where the counsel has overridden the client's preference. And so what's being attacked later is the lawyer didn't do what I want. Is there authority that supports the proposition that a lawyer's performance can be deemed unprofessional and deficient under Strickland when the lawyer did do what the client wanted? I don't think that there's a case on point, but the problem is that the case law supports that this is a trial strategy decision and that counsel is responsible for trial strategy. And moreover, I don't think there's a case that I can find that says when counsel does something that is clearly unreasonable, and it's not a mistake, he was – he consciously did it. Going into the trial, he struggled at trial. And I'd like to read that section from the trial, from his closing argument. It is so obvious that he knew that this was a terrible choice against his professional judgment, and he did it anyway. I don't think you have a constitutional right to go for an all-or-nothing strategy. I don't. That is not one of the fundamental decisions that is accorded to clients, and I think that Wainwright v. Sykes is very clear when they say only these decisions. But looking at this under the AEDPA standard, there's not really any clear direction to a State court that it would be violating or contrary to Supreme Court precedent by not finding the attorney's failure to follow his client's direction a deficient performance. Well, I think that Wainwright v. Sykes and Jones are those cases, because I think that the clear governing law here – this is a Strickland case, and Strickland provides the governing standard as to how to apply the law. And Jones v. Barnes and Wainwright v. Sykes provide to the lower courts the clear instruction about who does what at trial. When the client decides to go to trial, Wainwright v. Sykes and Berger's concurring opinion is very clear. It is the obligation of the lawyer to have the ultimate authority for all strategy decisions. And he specifically mentions that which jury charges to request. It wasn't a lesser-included situation. I mean, he's not addressing a lesser-included situation, but which jury charges to request, just as how to cross-examine a witness, is one of those kinds of strategy decisions. So I don't know what more you would need to know that a client doesn't hold the trump card. It's the lawyer's trump card. The lawyer must exercise responsibility and is ultimately responsible for the strategy decision. And Wainwright v. Sykes also talks about which defenses to develop, so that between which instruction and which defenses, those two decisions in Supreme Court case law fall squarely on counsel. And Wainwright v. Sykes constitutionalizes which decisions are for the client and lists them, and that's not one of them. Counsel, let me turn you to kind of a different approach to this case. As I understand what the State court decision said was, I'm going to assume incompetence of counsel. I'm not really going to decide that issue. I'm assuming incompetence of counsel. So then I'm going to turn to the second Strickland prong, which is prejudice, and tell us exactly what went wrong there in his discussion of what constitutes prejudice under Strickland. Well, the way that the standard that the New Madison court applied was a sufficiency of the evidence standard. So they were evaluating whether there was sufficient evidence. They said because there was sufficient evidence to find McCollum guilty of second-degree murder beyond a reasonable doubt, we can't say that the outcome of the proceeding would have been different. So there's sort of mixing and matching from Strickland and Jackson v. Virginia. There is an old Nisant Circuit case called Standen v. Whitley, I believe, that talks about the Nevada Supreme Court's habit of doing this. They were so the Nevada Supreme Court is looking at whether there's sufficient evidence to affirm a second-degree murder conviction. But the issue is whether, had the jury, but for counsel's deficient performance, had the jury had the instruction and been given the option to convict him of manslaughter, there is a reasonable probability that they would have done so. And that's an open question, but I think that according to – I mean, clearly we know from counsel, who's an experienced defense attorney, he believed this was a manslaughter. He believed this was a manslaughter case, that it was close enough, absent clear evidence of intent or malice, that the jury might have gone for that option. You probably are not aware, but our Court is currently struggling with what we do when the inappropriate standard of review is applied by the State court. Do we redo it ourself with our own reasoning, or would we just say State got it wrong? Grant relief. I know what you're talking about, and there are some cases that treat that as a de novo issue, and there's other cases that say we should substitute our – and that there's nothing to defer to, and that we should substitute our judgment. I believe that the best answer is that you have to apply the AEDPA standard, so combined with a de novo review, because there's nothing to defer to, there's no decision on the correct issue on this point, but AEDPA still requires that it be objectively unreasonable application of the law. So I think that that's the correct standard. And don't be surprised if we hold this case, because we do have a case on test and foreign bank review that may tell us what do you do, or what to do. Right. And I appreciate that. I do want to read this section from the trial – the trial counsel's closing argument, because I feel that it shows how pained he was, and he put himself really in this position, acknowledging that it's always difficult if you have a clear disagreement with your client. But this is what he said at closing argument. One page before, he had said to the jury that they have a Hobson's choice, which is murder or no murder, and then he says, but it's going to be up to you to make a decision on the murder, and you're not going to have any other choices, and that's because of the way the case has been presented to you. I'm concerned about that, as I said, because I don't want to have you feel you have to convict a person of murder just because he did something else, like a manslaughter of some degree. So here, it is clear before trial, based on the memorandum of understanding, that counsel knew he was headed in the wrong direction, and he wrote the memo in an effort to insulate himself from this very problem. And I would say that there's nothing wrong with writing a memo to record what happened, but that doesn't get you off the hook for making what is clearly an unreasonable decision. And then we have him at counsel paying on this issue because it really is, the manslaughter is so crucial, so integral to the defense that he had to put on, which is there's not so – it's not an alibi defense. He's – this is the person. He killed somebody, and this is integral to giving the jury that other option. Isn't that almost tantamount to pleading guilty to manslaughter? I mean, is it – you know the case better than I do, but my review of it suggests that if manslaughter is in front of the jury, the best the defendant can seriously hope for is a conviction for manslaughter. And if that's the case, it pushes back to me, well, whose decision really is this? If the defendant is – does this mean the defendant is required by his counsel to come very close to pleading guilty to manslaughter? The defendant may well be rational in saying, look, I want to roll the dice. I don't want to serve whatever time I'm going to have to serve for manslaughter. Shouldn't that be the defendant's decision? I don't think it is. And the reason is that the Supreme Court a few years ago in a case called Florida v. Nixon, and that was a capital case regarding penalty. But the counsel – they specifically addressed whether when the counsel admits guilt in the penalty phase, there needs to be an on-the-record canvas about whether the client actually agreed to plead guilty. And the answer was no. And so that there's no reason to. It's up to counsel to exercise strategy over the case. If that's the strategy, either – But counsel can't plead guilty. He can't plead guilty. But they – and they said this may not apply in a run-of-the-mind case, but I think this is a situation where when you have an obligation to represent the best interests of the client, this client is not going to walk on this evidence. It's – there's too much there, but it may not be second-degree murder. He had an obligation, I think, to act on the best interests of the client, and also once – But let's just take your premise, which, frankly, is pretty consistent with mine. This guy isn't going to walk if manslaughter is in front of the jury. Right. Second-degree murder, well, frankly, if I were a betting man, I'd probably feel the way the lawyer did, that this jury is not going to let that guy walk even if the elements of second-degree murder don't match this set of facts very well. But that's – that's an option that says, look, if I, the client, think this jury is going to follow what the judge tells them and look for each of those elements and they can't prove that, I'm a betting man. I want to walk. The only way I'm going to walk is to roll the dice and take the risk. Why is it the lawyer's choice to make that decision? I think that it goes back to Jones versus Barnes. Once you decide not to plead guilty and to admit to the offense, you hand over the reins to your counsel, and I admit it's a very paternalistic, lawyer-centered view of the world, but that is the world that we live in, in the law, and to make those decisions about what is in the best interest of the client in terms of strategy and that ultimately asking for that instruction is a strategy decision even if it doesn't mean it's going to end up with something. So I'd like to reserve the balance of my time. Thank you. If it pleases the Court, my name is David Neidert. I'm a senior deputy attorney general representing the Respondents in this case. It's interesting that counsel cites Wainwright versus Sykes and Jones versus Barnes as providing the method to be followed, and yet she also cites the ABA standards. But what she doesn't do in that argument is if she wants to cite Jones versus Barnes and the ABA standards that are cited, she should cite the ABA standards that were, in fact, in effect at the time Jones versus Barnes was written. And that is because in 1980, the commentary, the standard 4.52, said, quote, in a murder prosecution, the defendant rather than the defense attorney should determine whether the court should be asked to submit to the jury the lesser included offense of manslaughter. That was the commentary that the Supreme Court had when they cited the ABA standards and who had what function when they cited the standards in Jones versus Barnes. I believe, Judge Clifton, you had an excellent point with respect to who makes the decision and at what point are you, in fact, pleading your client guilty over your client's express desires to roll the dice. Because maybe it's not – maybe it's a situation where you're going to plead your – where you're going to say my client's not guilty of first-degree murder, my client's only guilty of second-degree murder, because the State cannot show all of the evidence for first-degree murder. And in that situation, who makes that determination? And I believe it turns into a slippery slope when it comes to lesser included offense instructions, particularly when you have, as we have here, a defendant who basically says they've charged me with murder, then by golly, they're going to find me guilty of murder or I'm going to walk. And that, in a sense, is almost exactly what Mr. McCollum said. Can you also address the prejudice analysis that the Court did? Did the Court apply the wrong standard? Did it apply – it references sufficiency of the evidence, but it does it in the context of discussing the Strickland standard. Well, I think what the Nevada Supreme Court was saying, because they had addressed sufficiency of the evidence prior, was that in this case, there was no real prejudice because the evidence of guilt was, in fact, overwhelming, and that, in fact, we presume that juries follow the law and follow the instructions. We do not presume juries, when they're presented with an all-or-nothing situation, are going to add on to evidence that is not there in order to find a defendant guilty of something. But is that the Strickland standard? The Strickland standard for prejudice is that there is a – is that there has to be something that shows a reasonable probability that the outcome might have been different. Uh-huh. And here, it might have been different. Well, I think in here, I don't think it might have been – with all due respect, Your Honor, I don't believe it might have been different. Nobody's talked about the facts of this case. Well, we've taught – we've danced around them with respect to prejudice. But the facts of the case are these. Mr. McCollum was pursuing his girlfriend of – I don't know if it was a live-in girlfriend or a girlfriend – from bar to bar in the early morning hours in Reno. She ducked into a bar, and she asked the bartender, the victim in this case, Mr. Mone, Mr. Mone's, for help. And he said, I'll escort you to your car. And Mr. Mone's is approximately 5'4", weighs approximately 250 pounds. By testimony, he has carpal tunnel syndrome, so he cannot fully close one of his hands. And Mr. Mone says, I will escort you to your car. I know. The facts are hideous. The facts are hideous. My point is, Your Honor, is that no matter what type of prejudice you're looking at, I don't think there's a reasonable probability the facts would be different in that, as Mr. Mone was escorting the lady to the car, the defendant tackled the lady, knocked her down, and he grabbed Mr. Mone, put him against his wall, and started pummeling him. Somebody talked a horn or distracted him for a second, which caused Mr. McCollum to let go, at which point Mr. Mone's fell to the ground. And once Mr. Mone's was on the ground, Mr. McCollum didn't walk away or do anything else except turn around and kick him repeatedly. These facts, which are the facts, the hideous facts of this case, show that the jury would have been justified to find Mr. McCollum guilty of first-degree murder. They want the defense wants to or Mr. Mone. What are the key pieces between them? What additional element has to be demonstrated to go from the manslaughter to the second-degree and from the – well, actually, just do that one, because the first-degree murder doesn't matter for now. What's the piece that matters? I think that Nevada law requires there to be a reckless indifference to human life for it to be second-degree murder, and that Mr. McCollum's conduct in hitting the victim repeatedly and then kicking him, even though it was the blow when his head hit the ground that was ultimately the cause of death, shows a reckless indifference to Mr. – to Mr. Mone's. But did it show that it was deliberate? Did it show that it was willful as long as Ann premeditated? I think that there was – that I think the – you can look at – looking at the jury instruction and how Nevada law defines those terms, that Mr. McCollum's conduct in holding him against the wall and pummeling him and then kicking him meets those standards as well, Your Honor. I mean, this is – this is an egregious facts case as far as for prejudice, and – This is an egregious facts case, so egregious that I can understand a defense lawyer sort of wanting the pendulum to go so far to the other side, because the victim here was so unrelated. I mean, this is really a crazy thing to do, that you're sort of wanting to make the argument, my guy's out of his mind, you know. And develop some – engender some kind of sense in the part of the jury that this is just a bizarre behavior and he's not really like that, and so if the victim is something less, you know, juries make compromises sometimes. I mean, I can understand the defense counsel's desire to have a lesser included offense. It's not a futile act. Maybe the jury will hit upon that. Well, for us, it's reasonable probability, and you're trying to say, really, there's no reasonable possibility of the jury moving down to whatever they're given as an alternative to the second degree. And I – and that's my point, exactly, Your Honor, is that based on the facts of what Mr. – the undisputed facts of what Mr. McCollum was doing, other than that that – that there's not a reasonable probability the jury would have found Mr. McCollum guilty of anything but murder of some degree, and they found him guilty of second-degree murder. Now, even if the State applied the wrong standard, should we make this an independent decision of ours? I don't – I don't believe so. I believe that even – that even if the – even if the incorrect standard is stated, there's still the prism of AEDPA, and that is, was the State court's decision on unreasonable application of Supreme Court law, and in this case, Strickland? And so I don't think it's – no, so I don't believe – no, I don't think it's a strict de novo review by this Court if you conclude that the Nevada Supreme Court applied an incorrect standard. The – I think when you look at – at this case, I think the – I think the defense attorney was, in fact, faced with a quandary. He wanted to be able to argue manslaughter, and he wanted to be – and his client said, I want to roll the dice. I want to be the one to – to decide. And if they – they said – they said I committed murder, and heck, if they can't prove murder, I get to walk. And if you look at the defense closing argument, that's what the defense attorney did, is he said, look, ladies and gentlemen, we – you might want to punish Mr. McCollum, but you've been instructed by the Court that all these elements have to be met. And if they – if the State hasn't met even one of these elements, no matter how much you don't like what Mr. McCollum did, he's entitled to an acquittal. That was the – that was the long and the short of defense counsel's closing argument to the jury. And so he made – so he took the position that his client wanted. He took the position that it's all or nothing. He didn't prove it all. He gets to walk. And I think that the – in this type of situation, if that's what the defense – the client wants, that's what the defense attorney should do. I certainly think that he was wise to memorialize that this strategy was his client's and not his own. But he ended up following the strategy that his client wanted him to pursue. So unless there's any further questions, I believe that the – that the district court in this case got the issues right with respect to all four of the issues that were certified before the Court, but certainly that the case law is such that – and I – and I also am aware of no case where counsel has been found to be ineffective for following his client's wishes in this type of situation. The closest you have is the Tenth Circuit case that held that counsel was not ineffective for going against his client's wishes. But I don't think that is the same type of case. So that when you look at all four issues, including this issue, that there – that the district court got it right – the Nevada Supreme Court got it right in the first instance, and that under the AEDPA standards, that nothing wrong occurred and that the district court should be affirmed. And if there's no further questions, I thank you for your time and attention. Thank you. Rebuttal? Thank you. I just want to make a few quick points. I think as a premise here generally, if we have the case law from the Supreme Court of the United States that tells us very specifically a limited number of decisions that the client is authorized to make and that – where the client actually holds the trump card, and we have the Supreme Court telling us that everything else at trial is the lawyer's decision, if we allow – if we start to allow deference to the client on this issue or other issues, then where does that – we're on a slippery slope. And the problem there is a waiver – is a waiver problem. Let me take you up on that. Because at some level, you know, do I start the cross-examination by asking about this witness or that witness? The client's ill-equipped. It would be easy to say in that case the lawyer's got to pay attention to himself. But when you have what seems to me to amount to very close to the equivalent of pleading guilty to manslaughter – now, pleading guilty is one of the things – one of those, what, four questions uniquely reserved to the client. And this seems to me, if it's on a slope, it's on a side of the slope that's real close to the side that belongs to the client. Well, I disagree with that because of the allocation of when you go to trial – when you go to trial and you've rejected the possibility of a guilty plea, and you're – and you're – you hand over the reins to counsel to make those kinds of decisions. If this was a multi – if this was a multi-count indictment and we knew that there were clear convictions on some things and not on the other, I don't think that any of us would have a problem with saying, okay, my client is a felon and my client had a gun, but he didn't do X, Y, and Z. And that would be tantamount to pleading guilty. But that is a matter of strategy that I think this Court would be comfortable deferring to, because that's a way to play the jury, to get them to do something that's going to be most beneficial to the client. And I don't think that the Supreme Court or this Court would equate that with a guilty plea. And I think that same kind of strategy decision is happening here. I do want to go briefly to the ABA standard issue, as it's mentioned in Jones, and just make clear that in footnote 6 of that case, the Court rejects an ABA standard and doesn't defer to it that said that the – that the client gets to press every non-frivolous issue on appeal and that the lawyer is required to do that for the client. But then it approves in the next sentence the standard about – that allocates only these certain decisions to the client. And I think the problem with allowing deference to the client on strategy decisions is that then you get into a waiver problem, because the client doesn't understand that the lawyer is really the only person fit to make these kinds of decisions. He knows from his experience what this evidence looks like, what the jury is like, what the – how this is going to shake out from experience. And we don't have a client who's actually waived his Sixth Amendment right to counsel to provide that kind of advice. We don't have that in this case. So – and finally, we have to remember that our – my client was charged with battery with substantial bodily injury, and then the person – and then the victim died. And I don't want to minimize the harm and the loss to the victim, but this – but that difference between doing – having a battery that results in a – in a killing – in a death and having the intent and malice for secondary murder, that's a shady area, and it's precisely the kind of area where the jury, as Your Honor, Judge Clifton, as you suggested, might be – might be more comfortable or willing to compromise in that area. That's precisely what juries do, and we know that. That's precisely why we leave this kind of thing, these kind of judgments, to counsel, because clients, as the Supreme Court said in Wainwright v. Weiss, clients are laymen. They are completely ill-fit to be making these kind of determinations at the trial. So with that, I thank you for your time. Thank you. Roberts. Thank you. Thank you. Thank both counsel for the arguments. The case just argued is submitted.
judges: B. Fletcher, Clifton, Ikuta